IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HARVEY M. PALACIO, an individual,

Plaintiff,

vs.

INTEL CORPORATION, Inc., and DOES 1-7, inclusive

Defendants.

Case No.

**COMPLAINT FOR DAMAGES:**

(1) RACE, SEX, BASED HARASSMENT - CRA
(2) FAILURE TO PREVENT HARASSMENT - CRA
(3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff alleges as follows:

**INTRODUCTION**

1. This is an action for damages due to (1) Race, Sex Based Harassment- CRA; (2) Failure to Prevent Harassment and Retaliation - CRA; and (3) Intentional Infliction of Emotional Distress.

2. This action arises out of events involving Plaintiff HARVEY M. PALACIO and Defendant INTEL, a corporation, and DOES 1-7. HARVEY M. PALACIO was employed by INTEL D2 in Santa Clara, California which was closed and accepted a transfer to work as a maintenance technician at INTEL Fab11X in Rio Rancho, New Mexico in July 2008, and therefore jurisdiction within this judicial district is proper.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act.

## THE PARTIES

4. Plaintiff HARVEY M. PALACIO (hereinafter "Plaintiff" or "PALACIO") is informed and believes and thereon alleges that he was employed as a maintenance technician assigned to INTEL Hitachi Shift 7, owned by INTEL (hereinafter "Defendant" or "INTEL"). He began working for Defendant on March 6, 2006, and is currently on administrative leave from his employment. PALACIO entered into employment and was subjected to the wrongful conduct and discriminatory actions alleged herein in Rio Rancho, New Mexico. Plaintiff exhausted his administrative remedies by timely filing a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) against each defendant.

5. Plaintiff is informed and believes and thereon alleges that Defendant INTEL was at all times relevant herein a corporation, Owner of FAB11X, and employer of PALACIO.

6. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 7 therefore sues them by such fictitious names. Plaintiff is informed and believes and thereon alleges that said defendants are in some manner legally responsible for the activities and damages alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

7. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants was acting as the partner, agent, servant, and employee of each of the remaining defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining defendants.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 6 above.

9. INTEL Corporation has been previously hit with harassment and discrimination claims. Despite widespread publicity regarding unlawful harassment and discrimination by powerful corporations against men and women, the number of harassment claims has remained constant over the past decade. In other words, it is hard to teach an old dog new tricks. According to statistics from the EEOC, harassment in the workplace continues to be a major problem in this country with as many as 33,956 claims being filed in the year 2011, which equals 2,829 claims filed every month of the year 2011. A 2008 Louis Harris and Associates poll of 782 U.S. workers revealed that at least 31% of women say they have encountered workplace harassment and over 7% of men say they have been harassed at work, but very few of them say they reported the incident with no reports filed by over 62% of people who were harassed. HARVEY M. PALACIO was working at INTEL D2 in Santa Clara, California which was closed and accepted a transfer to work as a maintenance technician at INTEL Fab11X in Rio Rancho, New Mexico in July 2008. He is the only 50 year old male member from the Philippines assigned to Hitachi Shift 7. Since transferring to Shift 7, PALACIO reported to his supervisor on numerous occasions that he has been a target of harassing behavior by other employees. Supervisor down played the behavior as only practical jokes or the "GRAY AREA." Supervisor provided the following examples:

- Tommy Martinez who was a co-worker was targeted by someone that kept removing his clean room gown from his hanger during working hours which delayed his return to the FAB. This happened so frequently that he told the supervisor that he would report the on going incident to HR. Supervisor eventually talked to the Shift 7 group and told them to stop but did not investigate further to prevent future occurrences;

- Chris Zeltinger from Shift 6 was temporary assigned to train with Shift 7. Approximately 01/2012, Supervisor informed the group that Chris had cut his training short and was

transferring back to shift 6 due to his mistreatment on the shift that was starting to affect him personally. Supervisor described it as embarrassing behavior and told the S7 group once again to stop but did not investigate further to prevent future occurrences;

- Zachary Sigmon who is the Shift 7 Supervisor was himself targeted. After the incident with Chris, Supervisor informed the group that someone keeps moving his side mirrors on his jeep. This was a clear line crossed but the Supervisor told the Shift 7 group once again to stop but did not investigate further to prevent future occurrences;

10. During PALACIO'S employment in FAB11X, INTEL employees engaged in hostile, demeaning and discriminatory conduct such that PALACIO'S working conditions were significantly altered. Their conduct over the past year and a half easily rises to the level of severe or pervasive conduct for a hostile work environment race, sex based harassment and discriminatory claim both in New Mexico and under federal law. The harassing acts started in approximately April 2011. They consisted of numerous events, which took place throughout PALACIO'S employment, including but not limited to:

- When PALACIO would leave his work station to perform on equipment work, he would return and find his monitors tilted in a non-ergo position that is not conducive to a proper work environment and goes against INTEL ergo policies for monitors which can result in a negative performance evaluation that can culminate to dismissal. This occurred on approximately 7 occasions;

- On approximately 12 occasions, PALACIO discovered his clean room gown missing from his assigned hanger during working hours. He had to replace the missing gown which would delay his return to work inside the FAB. This action continued even after changing location of assigned hanger. Being late to work or from breaks goes against INTEL employment policies which can result in a negative performance evaluation that can culminate to dismissal;

- PALACIO used a small plastic bag to hold work related items. This bag was normally stored in a cubby to the left of his work station. On numerous occasions that he would leave his work station to perform on equipment work, he would return and find garbage put into his bag to include waste paper, used rags, used batteries, as well as contents of his bag removed and hidden, and his flashlight disassembled then the bulb darkened with black ink which hindered proper lighting when PALACIO would inspect tools. The message was clear that PALACIO was only as good as garbage. This demeaning action was directed at PALACIO approximately over 15 times;

- On August 31, 2012, at approximately 18:45, John Lynch, John May and PALACIO arrived at the Hitachi pass down area where Mark Munoz, other Shift 7 members and Some Shift 6 members had already gathered. PALACIO walked to the front to provide critical information to Mark Munoz on a Hot Lot that had an error on one of the Non-Copper tools for pass down when PALACIO felt Eli Quintana put something on his back. After completing his pass down he went to Joe Perez who he trusted as the Safety Rep and asked if there was something on his back. PALACIO did not want to be ridiculed or humiliated in front of his peers. Joe Perez told him no with a grin. PALACIO felt he was lying and told him so. PALACIO noticed Randy Lehman in Bay 318 which is located at the end of the pass down area and went to him for help. He trusted Randy Lehman because he was senior and an HPM Rep. PALACIO asked him if there was something on his back. Randy Lehman said turn around and as PALACIO did he saw and heard Alex Rubinchik yell out "Don't read it, just do it" while Alex Rubinchik and others were laughing. That is when Randy Lehman kicked PALACIO on the butt. PALACIO was shocked of what just occurred but wanted whatever was on his back taken off so he asked Randy Lehman again to look at his back if there was anything there. Randy Lehman said again to turn around then kicked PALACIO again. The laughter from Alex and others continued but PALACIO did not want to walk back in front of the others while he could only assume still had the sign on his back. PALACIO asked Randy Lehman a third time to please remove if anything was on his back. Randy said ok turn around and kicked PALACIO a third time. This time hard enough to physically hurt PALACIO. PALACIO noticed Chris Zeltinger was watching and he said come over here I will take care of it. PALACIO trusted Chris Zeltinger because when he and his family arrived here to New Mexico, PALACIO welcomed them to his home and provided Christmas gifts to Chris's wife and daughter. So PALACIO approached Chris and he told PALACIO to turn around which PALACIO did and Chris also kicked him. PALACIO was already hurting from what Randy Lehman had done to him so his kick compounded his pain. Chris then told PALACIO "No really turn around and I will remove it." When PALACIO hesitantly turned around Chris kicked him a second time and the pain was unbearable. PALACIO decided that this could not continue and walked back in front of the group to ask someone else to remove it. PALACIO was forced back to the group risking the possibility of someone else kicking him and continue the humiliation. As PALACIO made his way back to Mark Munoz, Eli Quintana stated "He's had his butt kicked enough" and proceeded to remove the sign. PALACIO knows it was Eli Quintana because his Supervisor later confirmed that it was Eli Quintana who put the "KICK ME" sign and also removed it. Mark Munoz not realizing what had just transpired released PALACIO from the pass down and PALACIO proceeded to leave. When PALACIO finally started driving home he realized the pain that was inflicted on him and the humiliation that he was subjected to. PALACIO felt demoralized and assaulted and he began to cry during the drive home. He could not tell his wife because he was so embarrassed and ashamed. This was the beginning of PALACIO having difficulty sleeping at night. The next day PALACIO called Mark Munoz and told him what occurred and that he was uncomfortable and could not bear to go to work. Mark Munoz advised PALACIO to take vacation and wait for the supervisors return from sabbatical on September 6, 2012, which was PALACIO'S first day back to work to report the incident;

- On September 6, 2012, PALACIO reported to Zach Sigmon via pager that he needed to meet with him due to an incident. They met in RR5 café where PALACIO gave him a hand

written account of the incident. PALACIO told Zach that he felt humiliated and assaulted. PALACIO asked Zach what he should do. Zach stated that he was obligated to inquire with HR and for him to go home and report to work the next day. At this time Zach did not ask if PALACIO was physically hurt or if he needed any medical attention. That evening, PALACIO'S wife asked why he was having difficulty sleeping and asked why he was home early. PALACIO finally broke down and told her of the incident. She cried so much and asked him "Why are they treating you this way when all you do is dedicate yourself to your work." PALACIO had no answer for her. Later in the evening PALACIO realized that he was in no shape to go back to work and face his peers. PALACIO needed help.

- On September 7, 2012, PALACIO notified Zach by pager and email to include a CC Email copy to Acting Area Manager Mike Viera that he needed medical help and was going to report to the On-Site Nurse. The nurse referred him to the On-Site Wellness Center and scheduled an appointment with a counselor. Zach contacted PALACIO and met with him in RR5 Café before his appointment and he told PALACIO that he had talked with HR and people involved with the incident and that the incident was confirmed. Additionally, he confirmed to PALACIO that Eli admitted he put the sign on PALACIO'S back. Zach told PALACIO that Eli was a stand up guy for admitting what he had done. Zach praising Eli for admitting that he perpetrated the incident was demoralizing to PALACIO. Zach also told PALACIO that HR stated for him "To get over it and move on." Zach instructed PALACIO to go home after completing his first counseling session that afternoon and return to work the next day. On September 8, 2012, PALACIO reported to work as instructed by his Supervisor. PALACIO was very uncomfortable and still felt humiliated but performed his tasks until the end of the day. PALACIO was confronted by Eli Quintana during the shift, though no altercation occurred he was exposed to a potential dangerous situation with a person directly involved with his complaint. This completed his work week and did not have to return to work until September 12, 2012;

- PALACIO reported on September 12, 2012, for a 4 day work week. He was assigned to the Front End (Non-Copper) Command Center. He performed his duties as required and kept a low profile due to his discomfort of being on shift. PALACIO was confronted by Randy Lehman once and Chris Zeltinger twice during the work week, though no altercations occurred PALACIO was exposed 3 more times to a potential dangerous situation with a person directly involved with his complaint.

- On September 14, 2012, PALACIO reported to the RR5 Wellness Center for a scheduled follow up appointment with a counselor. In his first session it was emphasized to him that this situation is not his fault. During this second session PALACIO expressed his discomfort of having to work right away with the same individuals involved with the incident. PALACIO also reported that he found himself walking in the FAB with his eyes down and trying to avoiding contact with others and that he found himself standing in the back of pass down or if required being in front during pass down not to expose his back but definitely away from the area where the incident occurred. Additionally, PALACIO informed the counselor that he continues to have difficulty sleeping. PALACIO was then advised that he needed to be in control of the current situation and that the only way he loses control is to give it away. Connie the INTEL counselor advised PALACIO that the best situation for him

was to no longer work in this environment because he had lost trust with the group and the company. Connie the INTEL counselor conceded that this would be a difficult thing to do. On September 15, 2012, PALACIO completed his work week and did not have to return to work until September 20, 2012.

- Due to the lack of communication and action on the reported incident from his Supervisor or lack of contact from Management and HR since he reported this issue, PALACIO was compelled to push forward and provide a first hand report submission to HR on September 18, 2012. PALACIO waited for an available HR Representative, Lisa DeVargas, who works in INTEL HR returned and approached him then asked if he needed help. PALACIO introduced himself and she immediately recognized that HR was informed of an incident that involved him. PALACIO informed her that he had not been contacted about this incident and that he was submitting a formal type written account of what occurred. PALACIO asked if she could read it but was told she had a meeting to go to and that she would give it to the individual handling the case. Instead of asking how he was or if they could help, she stated "What is it that you want to happen." PALACIO replied "I don't know because I still don't fully know what is happening." PALACIO asked if it was OK to take vacation for this work week because he still felt uncomfortable at work. She answered yes and that she would inform his Supervisor that she said it was ok. She also told him to check with the INTEL counselor if she would recommend for him to go on medical leave. She took his phone number and told him they would call if they had any questions. As PALACIO was leaving he told her "This has not only affected me but my wife as well and I just need for this to stop." PALACIO received no call from HR until after retaliation occurred and a police report was filed.

- On the morning of September 19, 2012, at approximately 08:30, PALACIO was at home in the process of cleaning a bag of items that he uses for work. When at work while assigned to the Front End Command Center it is well known that he keeps this bag in the bottom shelf of a cubby to the left of the Front End Command Center. This bag is the same one mentioned that had been targeted. PALACIO cleans this bag because co-workers put garbage in the bag or they mess with the contents of this bag. As PALACIO removed the contents of his bag a twist tie fell out of the bag. This twist tie was fashioned into a noose. PALACIO then realized that retaliation has just occurred and a threat was just given in response to his reporting. It then dawned on PALACIO that his safety has been jeopardized and there may be a possibility that his vehicle, home, and wife may also be at risk. PALACIO was forced to seek counsel and was directed to report the incident and what he had found to the police. Upon his arrival at the Rio Rancho Police Department, PALACIO was met by an Intel Security Representative who asked him a few questions and took a copy of the report he submitted to HR on 9/18/2012 and examined the noose that he had found in his bag. He recommended that they go to INTEL to sort it out. PALACIO stated that he had already reported to INTEL HR with no action or contact from HR. PALACIO then submitted a copy of this same report to the Patrol Officer and had him examine the noose he found in his bag. PALACIO answered questions as it related to the report and the Patrol Officer informed him that he would have to go to Intel to investigate and that PALACIO would be informed of the results of the investigation. Only after retaliation and a police report were filed did INTEL

HR meet with PALACIO on September 21, 2012.

11. PALACIO responded to the work place harassment by informing Zachary Sigmon his supervisor that this conduct was inappropriate and unwelcome, yet the harassment continued due to his lack of interest to investigate and hold the involved employees responsible. PALACIO complained numerous times regarding INTEL employees abusive and harassing conduct. Specifically, he complained to Zachary Sigmon regarding changing work station monitors position, removal of clean room gowns, and garbage being put in his bag. PALACIO again verbally and with a hand written letter complained to Zachary Sigmon who finally reported to Human Resources, regarding the abusive conduct and assault in the work place during working hours to which he was subjected. However, no one did anything and failed to properly investigate PALACIO'S complaints. Due to the lack of communication from his supervisor, manager and HR, PALACIO again complained to HR, Lisa DeVargas, by submitting a typed report on September 18, 2012 regarding the harassment and assault to which he had been subjected, and the failure to investigate his previous complaints but was told she was too busy to read the report and PALACIO was sent away. Finally, it was not until PALACIO was subjected to retaliation and forced to file a report with the Rio Rancho Police Department that his complaints were finally acknowledged.

INTEL Hitachi Shift 7 employees engaged in harassment on a regular and ongoing basis, failed to investigate and prevent harassment and publicly humiliated PALACIO by assaulting him in the work place during working hours. INTEL Hitachi Shift 7 employees engaged in a pattern and practice of race and sex based harassment against PALACIO. INTEL Hitachi Shift 7 employees have a long history of harassing peers as well as their supervisor, they targeted PALACIO because he was easy to isolate and perceived to be weak and helpless due to being the only employee in his area from the Philippines. PALACIO was not their kind and had intruded into their perceived control of the Shift due to his outstanding performance. Palacio was also

targeted because he was male, previous harassment was performed against only the male gender and because of INTEL managements failure to previously investigate and stop harassment against other males empowered INTEL Hitachi Shift 7 employees to continue this behavior without fear of being held responsible or accountable for these illegal acts. They would not harass the female employees for fear that management would actually take action against them. Sex based discrimination was evident when management and HR informed PALACIO to "To get over it and move on" after reporting this incident. PALACIO was made to report to work the very next day and be exposed to the same individuals that perpetrated the harassment. If a female employee would have reported an assault, she would have been given medical treatment and protection with a proper investigation performed. PALACIO should have received the same equal treatment as others that may or could have been affected with the same incidents based on state and federal equal opportunity rules and laws. INTEL management would not act until PALACIO was retaliated against and was forced to file a report with the Rio Rancho Police Department. As of September 26, 2012 during a meeting with INTEL HR Investigator Eva Breslin, she confirmed to PALACIO that all items he reported to include all incidents were found to be true and confirmed. Additionally, Eva informed PALACIO that thanks to his reporting another employee came forward to report that he was also assaulted at work during working hours by the same method which was kicking. Eva stated that Randy Lehman and Chris Zeltinger were both fired for kicking PALACIO. Additionally, Eva told PALACIO that based on the unnamed employee that subsequently reported they terminated Tommy Martinez for kicking that employee. Eva also confirmed to PALACIO that other inappropriate behavior was discovered to include name calling and nipple pinching. INTEL Hitachi Shift 7 employees are their own worst enemy. PALACIO has experienced emotional distress as a result of INTEL Hitachi Shift 7 employees' harassment of him and was forced to seek counseling. He is in fear of returning to an unsafe working environment in INTEL and lives in an isolated state and in constant fear of retaliation towards himself and his family.

12. INTEL Hitachi Shift 7 employees have attempted to intimidate PALACIO by placing a noose in his bag in retaliation for his reporting. The lack of action and investigation by

PALACIO'S supervisor, manger, and HR emboldened these employees and encouraged them to continue with illegal behavior without fear of consequence. However, there are basic tenets of human respect and dignity, which have been largely disregarded here. How sad and disappointing that INTEL who has a history of helping the community and touts safety as the number one priority for it's employees could so deeply contradict it's purported core values in being "A great place to work." INTEL and its employee's actions are against a man whose dedicated outstanding service through high precision maintenance and production, leadership and process improvement is well documented in support of INTEL'S business goals.

**FIRST CAUSE OF ACTION**
**HARASSMENT**
**CRA – U.S, TITLE VII et seq.**
**AGAINST DEFENDANTS INTEL AND DOES 1-7**

13. Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 11 above.

14. The above conduct was unwelcome, directed towards Plaintiff, and was part of an ongoing and continuing pattern of conduct.

15. The above conduct caused Plaintiff to perceive his work environment as intimidating, hostile, and abusive.

16. Complaints and/or information about much of the harassing conduct were made to Defendants, but the harassment continued. After the complaints, the harassment continued.

17. Plaintiff filed timely complaints against the Defendants with the EEOC alleging harassment, retaliation, and failure to prevent harassment. Thereafter, Plaintiff received from the EEOC notification of his right to sue in the Courts of the State of New Mexico, the Defendants for which complaints had been filed.

18. Defendants' acts were malicious, oppressive or fraudulent with intent to vex, injure, annoy, humiliate and embarrass Plaintiff, and in conscious disregard of the rights or safety of Plaintiff and other employees of Defendants, and in furtherance of Defendants'

ratification of the wrongful conduct of the employees and managers of Defendants. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants.

19. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

20. As a result of Defendants and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

21. The above harassing conduct violates Civil Rights Act (Title VII) et seq. and New Mexico public policy and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

**SECOND CAUSE OF ACTION**
**FAILURE TO PREVENT HARASSMENT**
**CRA – U.S, TITLE VII et seq.**
**AGAINST DEFENDANTS INTEL AND DOES 1-7**

22. Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 20 above.

23. In violation of Civil Rights Act (Title VII) et seq., Defendants, and each of them, failed to take all reasonable steps necessary to prevent harassment and retaliation against employees for opposing forbidden practices.

24. In perpetrating the above-described conduct, Defendants, and each of them, engaged in a pattern, practice, policy and custom of harassment. Said conduct on the part of Defendants, and each of them, constituted a policy, practice, tradition, custom and usage which denied Plaintiff protection of Civil Rights Act (Title VII) et seq.

25. At all relevant time periods, Defendants, and each of them, failed to make an adequate response and investigation into the conduct of Defendants and the aforesaid pattern and

practice, and thereby established a policy, custom, practice or usage within the organization of Defendants, which condoned, encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in harassment towards Plaintiff.

26. At all relevant time periods there existed within the organization of Defendants, and each of them, a pattern and practice of conduct by their personnel which resulted in harassment, and/or retaliation, including but not necessarily limited to, conduct directed at Plaintiff.

27. At all relevant time periods there existed within the organization of Defendants, and each of them, a pattern and practice of conduct by personnel which resulted in retaliation toward anyone, including but not limited to Plaintiff, who complained of harassment toward employees.

28. Defendants did not apply and willfully disregarded harassment training with respect to its employees and managers.

29. Defendants, and each of them, knew or reasonably should have known that the failure to follow education, training, and information as to their personnel policies and practices regarding harassment, and retaliation for complaining or resisting harassment, would result in harassment and retaliation against employees including but not limited to Plaintiff, for complaining or resisting the same.

30. The failure of Defendants, and each of them, to follow education, training, and information to personnel concerning policies and practices regarding harassment, and retaliation for complaining of or resisting the same, constituted deliberate indifference to the rights of employees, including but not limited to those of Plaintiff, under Civil Rights Act (Title VII) et seq.

31. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff therefore is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action. As a result of Defendants and each of their actions,

Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

32. The conduct of Defendants and/or their agents/employees as described herein was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants. Consequently, Plaintiff is entitled to punitive damages against Defendants.

## THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST DEFENDANTS INTEL AND DOES 1 THROUGH 7

33. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 31 herein.

34. Plaintiff is informed and believes and thereon alleges that Defendants, by and through its principals, agents and employees conducted themselves unlawfully in violation of public policy and applicable law as described above with conscious disregard of the result or outcome of such act. The unlawful harassment, retaliation, conduct towards and termination of Plaintiff, due to its improper motivations and surrounding circumstances constitute extreme and outrageous conduct by the Defendants, and each of them.

35. Through the outrageous conduct described above, Defendants acted with the intent to cause, and with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress.

36. At all relevant times, Defendants had actual or constructive knowledge of extreme and outrageous conduct described herein, and condoned, ratified and participated in such extreme and outrageous acts.

37. As a direct and proximate result of Defendants' willful, knowing and intentional acts, and Defendants' failure to act, Plaintiff has suffered and will continue to suffer mental distress and anguish. Plaintiff has suffered and will continue to suffer a loss of earnings, stock options, and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amount to be proven at trial.

38. The acts of Defendants, as alleged herein, were done with fraud, oppression and malice, with a conscious disregard for Plaintiff's rights; and with the intent, design and purpose of injuring Plaintiff, with an improper and evil motive amounting to malice, in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to recover punitive damages against Defendants, and each of them.

**REQUEST FOR JURY**

39. Plaintiff requests a Trial by Jury.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for relief as follows:

1. For general damages, including but not limited to back pay, front pay, according to proof, however, no less than the jurisdictional limit of this court;
2. Compensatory damages for future pecuniary loss, emotional pain and suffering, mental anguish, and other non-pecuniary losses.
3. Injunctive relief ordering that certain conduct be stopped or requiring changes to policies or practices
4. For special damages in amounts according to proof;
5. For punitive damages in amounts according to proof;
6. For attorneys' fees as provided by law;
7. For prejudgment, post-judgment and other interest as provided by law;

8. For cost of suit incurred herein; and

9. For such other and further relief as the Court deems fair and just.

Dated: April 25, 2013

MARTIN E. THREET AND ASSOCIATES

*Electronically filed*

By: */s/ Martin E. Threet*

Martin E. Threet, Esq.
A. Blair Dunn, Esq.
Attorneys for the Plaintiff Palacio
6605 Uptown Blvd. NE, Suite 280
Albuquerque, New Mexico 87110
Telephone: (505) 881-5155
Facsimile: (505) 881-5156